UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

| | |
|---|---|
| ANTHONY BENSON, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |
| v. | |
| ANCESTRY.COM OPERATIONS INC., | |
| Defendant. | |

----------------------------------------------------------------

Plaintiff,  ANTHONY BENSON**,** ("Plaintiff" or "Mr. Benson"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, ANCESTRY.COM OPERATIONS INC., ("ANCESTRY.COM" or "Defendant"), hereby alleges as follows:

## **INTRODUCTION**

1.    Plaintiff resides in Bronx County and is permanently disabled due to **bilateral enucleation**, a condition resulting in the complete absence of visual function. His diagnosis was certified by Dr. Jeffrey G. Odel, MD, a neuro-ophthalmologist at Columbia University Irving Medical Center, on September 10, 2022. (See Exhibit A.) Mr. Benson functions with total blindness and requires screen-reading software such as NVDA to access digital content. He has received ongoing orientation and mobility training through Lighthouse Guild programs for several years and remains highly motivated to regain functional independence through assistive technology. He cannot travel independently and relies on tactile and auditory cues for navigation,

communication, and daily tasks.

2.     Plaintiff brings this civil action against Defendant, ANCESTRY.COM OPERATIONS INC., for its failure to design, construct, maintain, and operate its highly interactive website, www.ancestry.com in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the essential products and services offered therein—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

3.     Defendant is a Delaware corporation with its principal office located at 1300 W Traverse Parkway, Lehi, Utah 84043. Defendant owns and operates the website https://www.ancestry.com (the "Website" or "Defendant's Website"), which offers consumers access to genealogy tools, DNA testing services, historical records, and subscription-based research platforms nationwide, including in New York.

4.     Defendant offers its services to the general public from which it provides a marketplace e-commerce platform providing DNA and genealogy services. Defendant allows users to purchase a DNA kit for delivery to their home. The customers then create an online profile and send the kit back to Ancestry with a saliva sample. Through the website, users can purchase services connecting them to persons with similar genetic makeup. Defendant encourages customers to download their Mobile App to get many features including discovering your family story, learn about your ethnic and geographic origins, and finding others who have similar DNA as you, amongst other features of the App delivered to customers' phones. As such, it has subjected itself to the ADA because Defendant's App is offered as a tool to promote, advertise, and sell its products from a place of public accommodation.

2

5.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

6.      Congress has issued a clear and national mandate to eliminate discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity—barriers that are perpetuated by websites and other public accommodations that remain inaccessible to blind and visually impaired persons. Both New York State and New York City law similarly require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7.      Ancestry.com has operated as a public-facing digital platform since the late 1990s, offering subscription-based genealogy and DNA services to millions of users. In December 2020, Defendant was acquired by Blackstone Inc., a private equity firm with extensive consumer holdings. Despite prior litigation (*Crosson v. Ancestry.com*, SDNY, 2021) and a settlement agreement reached on or about July 2021, Defendant has failed to implement WCAG-compliant features across its website. A recent accessibility audit conducted by Plaintiff's counsel confirms that the Website remains riddled with violations, including missing alt text, inaccessible forms, improper ARIA roles, and broken navigation links. Defendant's failure to remediate—despite clear federal guidance and ample opportunity—reflects a sustained and knowing disregard for the rights of individuals with disabilities.

8.      Plaintiff is interested in learning about his genealogy and family history as well as

3

locating unknown relatives. Plaintiff browsed and intended to create an account, learn about the services provided, purchase a DNA kit, and learn about his family history on Defendant's website. However, unless Defendant remedies the numerous access barriers, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Ancestry provides to their non-disabled customers. Defendant's denial of full and equal access and therefore denial of its products and services offered, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

9.     Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its Website becomes and remains accessible to blind and visually impaired users.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because

Defendant conducts substantial and continuous business in this District through its interactive website. Plaintiff has repeatedly accessed and attempted to use the Website from his residence in New York County, which falls within this Court's jurisdiction. A significant portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York ("SDNY").

13.    Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its App. Because of this targeting, it is not unusual for Ancestry to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. All of the acts and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the website or App. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . .

5

. Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

14.     Jurisdiction and venue are appropriate in this District because Plaintiff resides here, and courts have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state operators.

## THE PARTIES

15.     Plaintiff, Anthony Benson is and was at all relevant times a resident of Bronx County, New York.

16.     Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). Plaintiff relies on screen-reading software, including Nonvisual Desktop Access ("NVDA"), to access digital content.

17.     Upon information and belief, Defendant Ancestry.com Operations Inc. is a Delaware corporation with its principal place of business at 1300 West Traverse Parkway, Lehi, Utah 84043. Defendant owns and operates the website https://www.ancestry.com, which provides subscription-based genealogy, DNA testing services, and access to historical records to consumers nationwide, including those residing in New York.

18.     Ancestry.com is part of a broader corporate family following its acquisition by Blackstone Inc. in December 2020. The Website serves millions of users seeking family history, DNA insights, and archival data.

6

19.    Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District.  Defendant purposefully targets and otherwise solicits business from New York State residents through its App.  Because of this targeting, it is not unusual for Ancestry to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District.  All of the acts and omissions giving rise to Plaintiff's claims have occurred in this District.  Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the website or App.  In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim.  Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294.  This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11.  Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

## **NATURE OF ACTION**

20.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C.

§ 12181 et seq., challenging Defendant Ancestry.com Operations Inc.'s operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

21.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

22.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

23.    Blind and visually impaired users of Windows-enabled computers have access to several screen-reading software programs. Some are commercially available, while others—such as Nonvisual Desktop Access ("NVDA")—are free and widely used.

24.    Plaintiff Anthony Benson is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28

8

C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

25.    Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

26.    Plaintiff attempted to access Defendant's website on multiple occasions from her residence in New York County, including on July 20, 2025, and July 25, 2025. She sought to register an account, build a family tree, explore historical records, and access customer support. However, she encountered multiple accessibility barriers that rendered the site unusable without sighted assistance.

## UNIQUE FEATURES OF ANCESTRY.COM

Defendant Ancestry.com Operations Inc. operates a national genealogy and DNA testing platform accessible to users across the United States, including New York. It conducts substantial business in this District by marketing its services to New York residents, offering subscription plans, and maintaining a website accessible within the District.

### Interactive Family Tree Builder

Users can create and edit dynamic family trees using drag-and-drop tools, pop-up modals, and expandable branches. These features rely heavily on visual cues and mouse-based navigation, rendering them inaccessible to blind users without proper ARIA labeling and keyboard support.

### Historical Document Viewer

Ancestry.com provides access to scanned census records, birth certificates, and military documents. These are often presented as image files without alternative text or descriptive metadata, making them unreadable by screen-reading software.

### DNA Insights Dashboard

The platform offers personalized genetic reports, ethnicity estimates, and DNA matches. These dashboards include charts, maps, and interactive elements that lack semantic structure and fail to convey meaningful information to blind users.

### STANDING

27.    Plaintiff Anthony Benson is a legally blind individual residing in Bronx County, New York. His blindness is medically documented as bilateral enucleation, resulting in the complete absence of visual function. This diagnosis was certified by Dr. Jeffrey G. Odel, MD, of Columbia University Irving Medical Center, on September 10, 2022. See Exhibit A.

28.    Mr. Benson uses NVDA screen-reading software to access digital content and perform essential tasks. He relies on accessible websites to research family history, manage personal records, and engage with genealogical databases.

29.    On August 14, 2025, and September 2, 2025, Plaintiff attempted to access www.ancestry.com to explore ancestry records, build a family tree, and retrieve historical documents. These tasks are essential to his personal interests and digital autonomy.

10

30.     Plaintiff was denied full and equal access due to persistent accessibility barriers, including:

- Unlabeled buttons obstructing navigation and form submission
- Missing alt. text on interactive graphics and document previews
- Keyboard traps and inaccessible modal dialogs
- Broken links blocking access to support and search functions.

31.     Despite multiple attempts, Plaintiff remains interested in using www.ancestry.com and intends to return once the site is made accessible. His intent is not speculative—it is driven by necessity, as Ancestry.com offers proprietary genealogical tools and databases not replicated elsewhere.

32.     On September 20, 2025, Plaintiff's in-house accessibility expert conducted a comprehensive audit of www.ancestry.com using PowerMapper's SortSite program. The audit covered consumer-facing sections of the site, including search interfaces, record previews, support portals, and account management tools. See Exhibits B–D.

33.     The broken link report identified over 2,100 pages containing links with empty href or src attributes, including core navigation and record access pages. These broken links triggered JavaScript errors and prevented screen readers from interpreting or activating navigation elements. Several pages also contained anchor links targeting non-existent IDs, rendering skip links and internal navigation unusable.

34.     The accessibility validation report uncovered 53 Level A violations across 2,532 pages, including:

☐ Missing alt text and placeholder descriptions such as "image1," "recordPreview," and "treeIcon"

☐ Autoplaying videos without pause controls

☐ Improperly structured tables and mouse-dependent controls lacking keyboard equivalents

35.    The audit also revealed markup errors that interfere with screen reader functionality, including duplicate IDs, empty button elements, and form controls with no accessible name. Over 800 pages contained untagged PDFs, making critical documentation inaccessible. Additionally, the tab order on many pages did not follow a logical sequence, causing confusion and disorientation during keyboard navigation.

36.    These findings constitute conclusive evidence of inaccessibility. The violations are systemic, recurring across thousands of pages, and directly impact the ability of blind users to search records, manage family trees, access account information, and engage with customer support. Defendant's website fails to meet the minimum standards required under Title III of the ADA.

37.    The accessibility barriers identified—such as missing alt text, non-descriptive link text, unlabeled form fields, keyboard traps, inaccessible modal dialogs, and improper heading structures—were not isolated glitches. They were systemic failures that denied Plaintiff the ability to browse, evaluate, and interact with genealogical content independently and with dignity. These barriers violate WCAG 2.1 Level AA and constitute unlawful discrimination under 42 U.S.C. § 12182.

38.    Plaintiff's experience on www.ancestry.com was not merely inconvenient—it was exclusionary. Each attempt to access historical records, build a family tree, or manage his account

ended in frustration, as unlabeled buttons, inaccessible modals, and mouse-dependent features blocked his path. He was unable to compare record formats, confirm document relevance, or participate in genealogical research independently.

39.     Plaintiff's intent to return to www.ancestry.com  is imminent and repeated. He relies on the platform's proprietary tools and databases to perform essential tasks related to his personal history and digital independence.

40.     Ancestry.com is uniquely positioned in the genealogical space. Unlike other platforms, it offers:

☐  The largest digitized archive of U.S. census records, immigration manifests, and military service files

☐  Integrated family tree tools that sync with DNA results and historical documents

☐  Proprietary search algorithms that surface relevant records across multiple collections

☐  Exclusive access to curated databases not available on competitors like MyHeritage or FamilySearch

41.     Plaintiff has previously attempted to use alternative genealogy platforms, including MyHeritage and FamilySearch, but found them lacking in record depth, search precision, and integration with DNA-based ancestry tools. These platforms do not offer the same breadth of historical documentation or the same level of personalization required for Plaintiff's research objectives.

42.     Until the digital barriers on www.ancestry.com are removed, Plaintiff remains excluded from a platform that purports to democratize access to historical records but fails to deliver accessibility to blind users.

## CLASS ACTION ALLEGATIONS

43.    Plaintiff ANTHONY BENSON brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.ancestry.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

44.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.ancestry.com  and were similarly denied equal access to its offerings due to the same systemic barriers.

45.    Common questions of law and fact exist among the Class, including:

46.    Whether www.ancestry.com qualifies as a "public accommodation" under Title III of the ADA;

47.    Whether Defendant's website constitutes a "place or provider of public accommodation" under the NYCHRL;

48.    Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to DraftKings' products, services, and support;

49.    Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

50.    Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the

same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

51.    Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

52.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

53.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

54.    Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

55.    Plaintiff, ANTHONY BENSON, on behalf of himself and the Class Members, repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

56.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

15

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

57.    Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

58.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

59.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

60.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied

full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

61.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

62.    Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

64.    Defendant is subject to NYCHRL because it owns and operates the Website www.ancestry.com,  making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

65.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update

or remove access barriers to Defendant's Website, causing the Website and the services integrated

completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access

to the facilities, products, and services that Defendant makes available to the non-disabled public.

66.    Defendant is required to "make reasonable accommodation to the needs of persons

with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating

based on disability not to provide a reasonable accommodation to enable a person with a disability

to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the

disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-

107(15)(a).

67.    Defendant's actions constitute willful intentional discrimination against the Sub-

Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-

107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

68.    Defendant has failed to take any prompt and equitable steps to remedy the

discriminatory conduct as these violations are ongoing.

69.    As such, Defendant discriminates and will continue in the future to discriminate

against Plaintiff and other members of the proposed class and subclass based on disability in the

full and equal enjoyment of the products, services, facilities, privileges, advantages,

accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

70.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

71.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

72.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

73.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

74.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

75.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

76.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a

substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

77.    Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

78.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

79.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

80.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

81.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-

20

impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

82.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

83.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

84.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

85.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff

and Subclass, causing irreparable harm.

86.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil

penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs

and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### FOURTH CAUSE OF ACTION
**(Violation of New York State Civil Rights)**
**("NYCRL")**

87.    Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City

Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully

set forth herein.

88.    Plaintiff served notice thereof upon the New York State Attorney General, as

required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

89.    Persons within New York State are entitled to full and equal accommodations,

advantages, facilities, and privileges of places of public accommodations, resort or amusement,

subject only to the conditions and limitations established by law and applicable alike to all persons.

No person, being the owner of a place of public accommodation, shall directly or indirectly refuse,

withhold from, or deny to any person any of the accommodations, advantages, facilities, and

privileges thereof. N.Y. Civ. Rights Law § 40.

90.    No person because of disability, as defined in § 292(21) of the Executive Law, shall

be subjected to any discrimination in his or her civil rights by person or by any firm, corporation,

or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") §

40-c.

91.      § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

92.      Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

93.      Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

94.      Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

95.      Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

96.      Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION

**(Declaratory Relief)**

97.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

99.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.      A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.      Pre-judgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.


Dated: New York, New York
         September 30, 2025

                         Respectfully submitted,

                         **JOSEPH & NORINSBERG, LLC**

                         _/s/ Robert Schonfeld_
                         Robert Schonfeld, Esq
                         _Attorneys for Plaintiff_
                         825 Third Avenue, Suite 2100
                         New York, New York 10022
                         Tel. No.: (212) 227-5700
                         Fax No.: (212) 656-1889
                         rschonfeld@employeejustice.com